UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Charles Grissom, *et al.*,   Case No. 3:12-cv-2504

    Plaintiffs

    v.   MEMORANDUM OPINION
    AND ORDER

City of Sandusky, *et al.*,

    Defendants

This matter is before me on Defendants' motion for summary judgment, Plaintiffs' opposition, and Defendants' replies thereto. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, Defendants' motion for summary judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. On September 20, 2011, at approximately 3:30 p.m., Sandusky Police Officers Eric Costante, Corey Mook, and Kevin Youskievicz were dispatched to Crossroads, a homeless shelter in Sandusky, Ohio, in response to a call regarding "trouble with a subject" later identified as Charles Grissom ("Grissom"). (Doc. No. 54-2 at ¶ 2). Grissom was taken to Firelands Regional Medical Center ("FRMC") at 3:46 p.m. with a chief complaint of "anxiety." (Doc. No. 54-4 at p. 18). Grissom reported "[t]here was no altercation" and he "d[id] not want to be there." (*Id.*) He was observed as "talking to self" and "pacing." (*Id.* at p.15). FRMC discharged Grissom at 4:10 p.m. because he "walked out." (*Id.* at p. 17).

Costante came into contact with Grissom at some point after leaving Crossroads. Grissom advised Costante he was "trying to avoid confrontation" and "wanted a ride" to the 400 block of

Meigs Street in Sandusky, Ohio. (Doc. No. 54-2 at ¶ 6). Costante had no further contact with Grissom after driving him to his desired location.

At approximately 6:00 p.m. Sandusky Police Officers Scott Dahlgren and Bradley Wilson were dispatched to the 900 block of Hancock Street in response to a call regarding an "assault." (Doc. No. 54-6 at ¶ 3). Upon arriving, "numerous subjects" advised Dahlgren that Grissom was the perpetrator. (Doc. No. 54-7 at p. 2). The officers handcuffed Grissom, (Doc. No. 54-3 at p. 7), and placed him in investigative detention in the back of Dahlgren's police car to "investigate fully" the alleged assault, locate the victims, and protect Grissom. (Doc. No. 54-7 at p. 6-7).

According to the incident report, the officers located victims Patricia and Evelyn Irby who expressed a desire to pursue assault charges against Grissom. Since both victims were injured and needed urgent care, the charges were "signed on their behalf." (Doc. No. 54-5 at p. 3).

Dahlgren transported Grissom to the Sandusky Police Department and advised him he was being charged with two counts of assault and persistent disorderly conduct. Grissom was placed in a holding cell where he was observed by Sergeant Ronald Snyder as being "odd," "disruptive and behaving erratically," (Doc. No. 54-9 at ¶ 6), and "renouncing the devil." (Doc. No. 60-4 at pp.16-17).

At some point after arriving, Dahlgren attempted to remove Grissom's handcuffs. Grissom "pulled away" and advised "he did not want them off." (Doc. No. 54-5 at p. 3). Snyder and Dahlgren entered the cell to remove the handcuffs and Grissom resisted again. Grissom then claimed he needed to use the restroom. At that time Grissom allowed Dahlgren to remove the handcuffs. After they were removed, Grissom began to take off his sweatshirt. Snyder requested Grissom "hand over the shirt prior to using the restroom" to ensure Grissom would not "harm himself in the restroom." (*Id.*) Snyder was aware of Grissom's "psychological issues," the

"dealings… with Mr. Grissom earlier in the day," and the officers' "concerns regarding his mental capabilities." (*Id.* at p. 5).

Grissom "repeatedly refused" to hand over his sweatshirt and "attempted to hide his sweatshirt behind him." (Doc. No. 54-9 at ¶ 11). At that time Snyder "secured [Grissom's] right arm and applied pressure to his right wrist to release the sweatshirt … hidden behind him in his left hand," then Dahlgren stepped behind Grissom and removed the sweatshirt from his hand. (*Id.*) After using the restroom, Grissom "laid on a bench" and "acted as though he was sleeping," became "dead weight," and did not respond to the Officers. (Doc. No. 54-5 at p. 3). Grissom was then placed in hand restraints and "reasonable force" was again used to escort Grissom to his holding cell. (*Id.*) After this incident, Grissom was also charged with resisting arrest. (*Id.*)

Grissom then advised he needed medical attention for facial wounds and a mental health evaluation. Grissom was transported to FRMC at approximately 7:30 p.m. where he was observed as "yelling" and "cussing." (Doc. No. 54-4 at p. 6). At the hospital, Grissom was diagnosed with a contusion and advised to follow up with his physician within 1-2 days. (*Id.* at p. 2). FRMC discharged Grissom at 9:49 p.m. because he "did not claim that he was suicidal, homicidal or wanting to hurt anybody else." (*Id.* at p. 7).

Charles and Joann Grissom filed suit against the City of Sandusky, the Erie County Sheriff Department, Sergeant Ronald Snyder, and Officers Scott Dahlgren and Bradley Wilson. Plaintiffs assert constitutional claims for the use of excessive force, unreasonable search and seizure, denial of health care, and failure to train under 42 U.S.C. § 1983 and for violations of his rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiffs also allege numerous state law claims, including negligence, intentional infliction of emotional distress, and loss of consortium. Defendants move for summary judgment on all claims on the basis of qualified immunity.

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822

4

F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## DISCUSSION

1. Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions… from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit employs a three-step analysis to determine qualified immunity: first, it must be determined whether a constitutional right was violated; second, whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and third, whether plaintiff has alleged sufficient facts to indicate that the alleged conduct was objectively unreasonable in light of the clearly established constitutional right. *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005); *Scicluna v. Wells*, 345 F.3d 441, 445 (6th Cir. 2003) (citation omitted). Once the defense of qualified immunity is raised, the burden shifts to the plaintiff to prove defendants are not entitled to qualified immunity. *Rodriquez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).

5

When establishing whether a right is clearly established, the court must be careful not to "define the right at a 'high level of generality.'" *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 508-09 (6th Cir. 2012) (*quoting Ashcroft v. al-Kidd*, 131 S Ct. 2074, 2084 (2011)). For example, the "'general proposition' that the Fourth Amendment prohibits police officers from using excessive force 'is of little help in determining whether the violative nature of [a defendant's] particular conduct [was] clearly established.'" *Id.* at 509.

A proper analysis is whether, for example, "it was clearly established in May 2007 that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force." If the answer is "no," "no constitutional right [was] violated… [and] there is no necessity for further inquiries concerning qualified immunity." *Santiago v. Ringle*, 734 F.3d 585, 593 (6th Cir. 2013) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Plaintiffs oppose Defendants motion for summary judgment claiming Defendants are not entitled to qualified immunity for the following reasons: (1) Defendants use of handcuffs and confinement in a police cruiser when arrestee was not resisting arrest rises to the level of excessive force in violation of his Fourth Amendment right to be free from cruel and unusual punishment; (2) execution of an arrest based solely on tips from witnesses without interviewing arrestee does not meet the required "probable cause" standard in violation of his Fourth Amendment right to be free from unreasonable search and seizure; (3) failure to react to conduct suggestive of a mental illness with previous knowledge of pre-trial detainee's mental instability rises to the level of "deliberate indifference" to the medical care of pre-trial detainees in violation of Plaintiff's Fourteenth Amendment right to adequate medical treatment; and (4) the City of Sandusky is liable under 42 U.S.C. § 1983 for failure to train employee police officers how to spot mental health issues rises to "deliberate indifference" to the rights of its citizens.

Defendants counter the response claiming: (1) Plaintiff's contention that use of handcuffs while wearing a gun holster and confinement in a police cruiser rises to the level of excessive force is not supported by relevant case law; (2) evidence of an assault charge meets "reasonable suspicion" for investigative detention and "probable cause" for arrest; (3) Plaintiff's "deliberate indifference" to a serious medical need claim fails because there is insufficient evidence to prove: Plaintiff had a "serious medical need"; the Police Officers had a "sufficiently culpable state of mind"; and Plaintiff was denied access to medical care; and (4) without showing "prior instances of unconstitutional conduct" on the part of the City of Sandusky, Plaintiff's "failure to train" claim cannot be met.

For the following reasons, Defendants' motion for summary judgment is granted.

a. Excessive Force

The right to be free from cruel and unusual punishment is a clearly established right under the Eighth Amendment in the post-conviction context and under the Fourteenth Amendment for pre-trial detainees. *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (citation omitted).

Whether a police officer's use of force rises to the level necessary to violate that right depends on whether, in light of the totality of the circumstances, the police officer's conduct was objectively reasonable. *Kostzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (*citing Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). Objective reasonableness depends on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Further the "totality of the circumstances" analysis must be based on "the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* (*quoting Graham*, 490 U.S. at 396).

The use of handcuffs may rise to the level of excessive force. *See Morrison v. Bd. of Trustees of Green Tp.*, 583 F.3d 394, 402 (6th Cir. 2009) (qualified immunity denied where police officer ignored complaint that handcuffs were too tight); *Baskin v. Smith*, 50 F. App'x 731, 737 (6th Cir. 2002);

7

*Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997). But use of handcuffs in an otherwise lawful arrest, without more, fails to state a claim for excessive force. *Palshook v. Jarrett*, 120 F. Supp. 2d 641, 656 (N.D. Ohio 2000) ("[i]nsofar as [plaintiff's] claim rests entirely on the fact that he was handcuffed… there is no cause of action for excessive force"); *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998) ("[i]f… the excessive force consisted of handcuffing [plaintiff] in connection with an arrest, the claim would fail because it would be apparent on its face that no constitutional violation had been pleaded").

If arrestee was "cooperative throughout the ordeal, posed no immediate threat to the officers, and did not resist arrest or attempt to flee" the amount of force may be deemed inappropriate. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). *See also McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988).

Lastly, detainment in a police car has constituted excessive force in some cases. *See Burchett v. Kiefer*, 310 F.3d 937, 946 (6th Cir. 2002) (subjecting plaintiff to excessive heat in an unventilated police car for three hours rose to the level of excessive force); *cf. Vance v. Wade*, 546 F.3d 774, 783 (6th Cir. 2008) ("[t]he Supreme Court's decisions… clearly permit an officer to handcuff and detain an individual during the execution of a search warrant") (*citing Muehler v. Mena*, 554 U.S. 93 (2005)).

I find Defendant Officers Dahlgren and Wilson did not violate Plaintiff's Eighth Amendment rights by using handcuffs, wearing a gun holster, and detaining Plaintiff in a police cruiser. Although I appreciate Plaintiff did not resist arrest, Defendants acted reasonably under the totality of the circumstances: there was a large group of people, some alleged Plaintiff was an assailant, and the allegedly injured victims had yet to be located. I therefore grant Defendants' motion for summary judgment on Plaintiff's excessive force claim.

b.  Probable Cause

"Although an officer may have reasonable suspicion to detain a person or his possessions for investigation, the investigative detention can mature into an arrest or seizure if it occurs over an unreasonable period of time under unreasonable circumstances." *United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997). While plaintiffs correctly state that an investigative detention may be in effect in some arrest cases[1]; I decline to address the issue here because under the present circumstances the Defendants meet the more demanding standard of probable cause regarding Grissom's arrest.

The Fourth Amendment protects against "unfounded invasions of liberty and privacy." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975). "For a police officer to have probable cause for arrest, there must be 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable cause, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (*quoting Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Further, "[p]robable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Id.* (Citations omitted.)

"The probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*.'" *Id.* (Emphasis in original.) This is considered "from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.*

---

[1] *See United States v. Butler*, 223 F.3d 368, 375 (6th Cir. 2000) ("[w]e have long recognized that officers cross the line from an investigatory stop into an arrest when they place a suspect in a police vehicle for questioning"); *United States v. Richardson*, 949 F.2d 851, 857-58 (6th Cir. 1991) ("'[i]t does not take formal words of arrest or booking at a police station to complete an arrest'… simply the 'deprivation of liberty…'").

9

Law enforcement officers are entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest. *Provience v. City of Detroit*, 529 F. App'x 661, 667 (6th Cir. 2013) (*quoting Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)). Unless "at the time of arrest, there is apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Id.*

Although there seems to be some disagreement as to whether Officer Dahlgren's and Wilson's conduct was based on eye-witness statements, the evidence supports a finding of probable cause regarding Grissom's arrest. (Doc. Nos. 54-7, p. 2; 54-5) ("[a]s officers were arriving to the listed area for an assault call, number subjects… advised that a black male later identified as Charles Grissom was the subject causing the problems"). Since the officers had probable cause to arrest Plaintiff, I find they acted consistent with Plaintiff's Fourth Amendment rights and are entitled summary judgment as to the false arrest claims.

    c.   Deliberate Indifference

"While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612, 615-16 (6th Cir. 2005) (citing *City of Revere v. Mass.Gen. Hosp.*, 463 U.S. 239, 244 (1983). Although the Fourteenth Amendment's Due Process clause governs such claims presented by pretrial detainees, they are "analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (*quoting Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

A detainee's right is violated when "prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (*citing*

10

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  It is important to note that the test for deliberate indifference is whether 'a *substantial risk* of serious harm' existed and does not require actual harm to be suffered." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) (*quoting Farmer*, 511 U.S. at 837). (Emphasis in original.)   If a detainee's need for medical care is obvious to a lay person, "the constitutional violation may arise." *Id.*  "While the right to medical care for serious medical needs does not encompass the right 'to be screened correctly for suicidal tendencies,' we have long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" *Comstock*, 273 F.3d at 702 (*quoting Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir. 1989).

To establish deliberate indifference an objective and subjective component must be met.  First, plaintiff must show the medical need is "sufficiently serious." *Id.* at 702-03 (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A "serious medical need" is "one that has been diagnosed by a physician mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Cooper v. Cnty. of Washtenaw*, 222 F. App'x 459, 465 (6th Cir. 2007) (citing *Blackmore*, 390 F.3d at 877); *see e.g., Galloway v. Anuszkiewicz*, 518 F. App'x 330, 333 (6th Cir. 2013) (suicidal tendencies are strong proof).

The subjective prong is met if an officer "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  The required "degree of culpability [is] greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (*quoting Farmer* 511 U.S. at 834).

A prison official does "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Comstock*, 273 F.3d at 703 (citation omitted).  But if there are

11

insufficient facts to "give rise to an inference of the risk," and that the officer actually "drew the inference," the court does not need to analyze whether prison officials "consciously disregarded" the alleged health risk. *Cooper*, 222 F. App'x 459, 469 (6th Cir. 2007).

At the summary judgment stage, a plaintiff need only "allege facts which, if true, would show that the official… perceived facts from which to infer substantial risk to the prisoner, that he [or she] did in fact draw the inference, and that he [or she] then disregarded that risk." Even if actual knowledge of risk can be shown at the summary judgment stage, the question of whether there was conscious disregard of that risk should be determined by a jury. *Id.*

Under the two-prong analysis required under *Farmer*, the first prong is satisfied because Plaintiff twice requested medical treatment. However, under the second prong, the facts, even when construed in Plaintiffs' favor, do not support the notion there the subjective prong of a denial of medical care.

The record shows Joann Grissom informed Officer Bradley Wilson shortly before Grissom was taken to the City of Sandusky Police Department that Charles Grissom is "bi-polar and ha[d] not taken his medication in several days… six or seven days" . (Doc. No. 60-3 at p. 42). Even if Officers Dahlgren and Sergeant Snyder were privy to that information during Charles Grissom's detainment[2], the allegations still fall short of satisfying the subjective component. This is because the Defendants did not ignore Plaintiff's request for a mental evaluation. At the officers' direction, Grissom was twice transported to FRMC within a six hour period. *See Amick v. Ohio Dep't of Rehab & Correction*, 521 F. App'x 354, 359 (6th Cir. 2013) (subjective component not met when supervisor and social worker referred inmate for assessment upon complaints of hallucinations). Moreover,

---

[2] On September 20, 2011 Sergeant Snyder was asked to "detail what verbal steps were taken to avoid the use of physical force." Sergeant Snyder responded, "Officers of our agency had dealings with Mr. Grissom earlier that day, where there were some concerns regarding his mental capabilities." (Doc. No. 54-9 at p. 4).

when Plaintiff was seen by the medical staff at FRMC, he was deemed not a danger to himself or others and was capable of refusing treatment. Even construing the facts in Plaintiffs' favor, these circumstances do not rise to a constitutional violation. *See Burgess v. Fisher,* 735 F.3d 462, 476 (6th Cir. 2013).

As the Defendants acted consistent with Plaintiff's Fourteenth Amendment rights, I find they are entitled to summary judgment on the deliberate indifference claim.

    d.   <u>Failure to Train</u>

A failure to train may be the basis of liability under § 1983 where a municipal's "failure to train amount[ed] to deliberate indifference to the rights of the persons with whom the police came into contact." But a "[p]laintiff's claims against [a] city are dependent upon a constitutional violation by its officers." Thus, if the court finds plaintiff suffered no constitutional injury at the hands of city employees then the claim fails. *Whitlow v. City of Louisville*, 39 F. App'x 297, 307 (2002).

As City of Sandusky employees Officers Dahlgren and Wilson, and Sergeant Snyder did not violate the Plaintiff's constitutional rights, the City is entitled to summary judgment on Plaintiffs' failure to train claim.

2. State Law Claims

As to Plaintiffs' claims under state law, courts "must look to state immunity law to determine whether a denial of immunity based on state law is appealable." *Jones v. Sandusky Cnty., Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013) (*quoting Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007)). Ohio Revised Code § 2744.02(A)(1) grants immunity to political subdivisions such as the City of Sandusky. Additionally "Ohio law holds that a claim against an officer in his "official capacity" is simply another way of phrasing a claim against a governmental entity itself." *Burgess v. Fischer*, 766 F. Supp. 2d 845, 852 (S.D. Ohio 2010) (citation omitted).

The Plaintiffs have not offered any arguments in opposition to the Defendants' motion on the remaining state law claims. Finding none of the exceptions in O.R.C. § 2744.02(B) apply, all state law claims are dismissed against the City of Sandusky and the Defendants in their official capacities.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 54) is granted.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge